Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

| | |
|---|---|
| United States District Court<br>Southern District of New York | 7:19-cv-05165 |
| Theresa Andriulli, Jane Doe, individually and on behalf of all others similarly situated<br><br>       Plaintiffs<br><br>    - against -<br><br>Danone North America, LLC<br><br>       Defendant | Complaint |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Danone North America, LLC ("defendant") manufactures, distributes, markets, labels and sells yogurt products labeled as vanilla yogurt to consumers from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website (the "Products").

2. The Products include the lowfat and whole milk and the Oikos Triple Zero line.

  

1

3.   The Products are uniformly marketed as Vanilla-based yogurts on the labels, point-of-sale marketing, retailers' display ads and promotion, websites, television and radio ads.

4.   The Products are misleading because despite being labeled as "Vanilla," they have less vanilla flavor derived from vanilla beans than their name suggests.

5.   Among yogurt flavors, vanilla is a perennial favorite, and is the third-most preferred according to a recent survey by FONA International, a flavor company.[1]

6.   Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[2]

7.   Due to its versatility and demand, there are constant attempts to imitate vanilla, whether through synthetic vanillin made from tree bark, or harmful compounds such as coumarin.

8.   Daily headlines alert us to the growing threat of "food fraud" across the world – whether cottonseed olive oil to the horsemeat scandal in the European Union.[3]

9.   However, the Congressional Research Service has concluded that food fraud comes in various forms and does not always result in public health dangers.

10.   These methods include the (1) replacement of valuable ingredients - botanically derived natural vanillin- with less expensive substitutes like synthetically produced vanillin and (2) addition of "small amounts of a non-authentic substance to mask inferior quality ingredient[s]"

---

[1] What's Next for Yogurt: A Global Review, FONA International
[2] Daphna Havkin-Frenkel, et al. "A comprehensive study of composition and evaluation of vanilla extracts in US retail stores," Handbook of Vanilla Science and Technology (2019): 349-366 (Authors Note: Havkin-Frenkel's work also discusses "Vanilla WONF" and credibly expresses the position based on consumer understanding and regulatory correspondence, that it is not permitted by vanilla standards when a product purports to be labeled as "vanilla" because by definition, it is misleading, since the characterizing vanilla flavor is "spiked" by the simulating, resembling, extending other natural flavors with vanillin and not bound by the limits for these combination ingredients set by the standards, resulting in diminished vanilla content)
[3] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019).

such as color additives to enhance the color of a lower quality food component – i.e., beta carotene.[4]

11. Food fraud also encompasses the deliberate misidentification and obfuscation of a product's components ("ingredient deception").

12. As the world's second most expensive (after saffron) flavoring ingredient, there is a strong incentive for bad actors to "pass off" inferior, cheaper and non-vanilla substitutes in the place of real vanilla, resulting in immense profits.

13. These adulterant substitutes mimic the real vanilla flavor and have included ethyl vanillin, derived from wood pulp, coal tar, or paper processing, coumarin (a toxin), natural flavors and Tonka beans (banned from the United States).

14. While technology has improved to detect the fingerprints of vanilla fraud through chromatography, the bad actors are always a step ahead, devising new ways of slipping by the latest tests.

15. For more than half a century, U.S. regulations have only permitted the use of vanilla-based ingredients under specific circumstances, to limit and prevent consumers being deceived.

16. The reason these standards exist is to prevent consumers from being deceived by products that purport to contain vanilla in a form and amount they expect.[5]

17. By law, vanilla refers to "the total sapid and odorous principles extractable from one unit weight of vanilla beans, as defined in paragraph (b) of this section, by an aqueous alcohol solution in which the content of ethyl alcohol by volume amounts to not less than 35 percent."[6]

18. The labeling of the food makes direct representations with respect to the primary recognizable flavor by word ("Vanilla"), vignette ("vanilla flower") and color scheme (beige-tan),

---

[4] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[5] 21 C.F.R. § 169.175-182.
[6] 21 C.F.R. §169.3(c)

3

such that vanilla is the characterizing flavor.

19. Only through detailed review of the requirements for labeling vanilla and general flavors, side-by-side with the ingredient lists, is it possible to uncover the deception.

|  | Statement of Identity | Ingredient List |
|---|---|---|
| Oikos |  | INGREDIENTS: CULTURED GRADE A NON FAT MILK, CHICORY ROOT FIBER, CONTAINS LESS THAN 1% OF WATER, NATURAL FLAVORS, MALIC ACID, VEGETABLE JUICE CONCENTRATE AND BETA CAROTENE (FOR COLOR), STEVIA LEAF EXTRACT, SEA SALT, VITAMIN D3, SODIUM CITRATE. |
| Whole |  | INGREDIENTS: CULTURED GRADE A MILK, WATER, CANE SUGAR, CORN STARCH, CONTAINS LESS THAN 1% OF NATURAL FLAVORS, LEMON JUICE CONCENTRATE, CAROB BEAN GUM, MILK MINERALS, VITAMIN D3. |
| Lowfat |  | INGREDIENTS: CULTURED GRADE A REDUCED FAT MILK, SUGAR, NATURAL VANILLA FLAVOR, PECTIN. |

20. The use of the term "with other natural flavors" (WONF) on the front label means these flavors (WONF) "simulates, resembles or reinforces the characterizing flavor [vanilla]."[7]

21. Because the flavor of the yogurt is vanilla and not, for example, a fruit flavor, the WONF will by definition reinforce and simulate the vanilla flavor.

22. The ingredient which is best known for simulating and extending vanilla is vanillin (an artificial flavor).

23. The reason why vanillin would be included in WONF is because it is misleadingly described as a "natural flavor" if it is produced through a natural process like fermentation, even though it is not derived from actual vanilla and it can be made from natural sources.

I.    Vanilla WONF – Vanilla Extended and Adulterated by a New Name

---

[7] 21 C.F.R. § 101.22(i)(1)(iii)

24. Listing an ingredient as Vanilla WONF on foods that are characterized by vanilla is false, deceptive and misleading for several reasons.

25. <u>First</u>, Vanilla WONF is the equivalent of the standardized vanilla-vanillin combination ingredients– Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[8]

26. When these ingredients are used or prepared in their standardized form, the proportion of vanilla to vanillin is fixed – "for each unit of vanilla constituent, as defined in §169.3(c), contained therein, the article also contains not more than 1 ounce of added vanillin."[9]

27. By labeling its ingredient "Vanilla WONF," defendant has avoided complying with the limitation on the amount of vanillin contained with real vanilla

28. There is more vanillin in Vanilla WONF relative to vanilla than there is in the standardized combination ingredients and consumers are not informed of this.

29. <u>Second</u>, the vanilla-vanillin combinations are required to identify as "Vanilla-vanillin extract/flavoring/powder _-fold" with the blank filled in by the "fold" or strength of vanilla constituent, "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring).'"[10]

30. By using the term "Vanilla WONF" as opposed to one of the standardized and required designations, the Products omit informing consumers of the presence of the artificial flavor, vanillin and instead are presented with the more desirable term, "natural flavor."

31. <u>Third</u>, use of the term WONF gives a reasonable consumer the misleading impression that the "natural flavor" is derived from vanilla beans, when almost no vanillin is

---

[8] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[9] 21 C.F.R. § 169.180(a).
[10] 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).

5

separately derived and used that is from vanilla beans.

32. Rather, almost all vanillin on the market is obtained from sources such as lignin and paper processing by-products.

33. <u>Fourth</u>, consumers are more willing to purchase products that promote natural ingredients as opposed to artificial ones.

34. <u>Fifth</u>, the regulations do not countenance addition of "other natural flavors" to vanilla ingredients because the result will be a disrupted marketplace where businesses are in a race to the bottom to come up with formulations that include the least amount of vanilla while substituting vanillin and potentially harmful ingredients like Tonka bean and coumarin.

35. It is misleading to use (synthetic) vanillin in a vanilla product to boost the vanilla flavor, without clearly designating that the vanillin is derived from sources that are not vanilla.

36. Otherwise, the consumer will believe a product's flavor is exclusively derived from vanilla beans and pay more money for it.

37. As a result, Vanilla WONF is an end-run through consumer protections which are designed to *prevent* products as being labeled with vanilla, but having an insufficient amount of flavor derived from the vanilla bean, and a disproportionate amount of vanillin.

38. The vanilla standards do not provide for the addition of "other natural flavors" to vanilla because this results in the "spiking" of vanilla "with other natural flavors," such as synthetic, or ethyl vanillin.

39. Consumers are deceived by the Products into believing that more vanilla is present than actually the case, and that all of the vanilla flavor is derived from vanilla beans.

40. <u>Sixth</u>, the statutory framework establishes that where a flavoring is represented as

"vanilla" and/or tastes like vanilla, it is subject to labeling and composition standards for vanilla.[11]

41.  Since vanilla is the only flavor with a standard of identity, its own requirements take precedence over the general flavoring regulations.[12]

42.  Based on the Vanilla WONF having less of the required and valuable constituent – vanilla – and more of the lower quality, cheaper vanillin, it should be described as an imitation.

43.  Vanilla WONF is closest to a food which has a standard of identity: the vanilla-vanillin combination ingredients.

44.  Vanilla WONF deviates from the vanilla-vanillin combination ingredients by having a lower percentage of the more valuable vanilla and greater percentage of the less valuable and lower quality vanillin.

45.  Vanilla WONF should be labeled "Vanilla-Vanillin Extract/Flavoring/Powder, Imitation" so consumers are not misled as to the flavor of the Products.

46.  Defendant's Oikos Vanilla is further misleading because it contains "beta carotene," commonly known as the pigment in carrots.

47.  When used in food production, it provides a yellowish hue similar to the shades of cream common in milkfat, and primarily, in butter, produced by dairy cattle in the United States.

48.  No allegation is made with respect to the how the beta-carotene is declared in the ingredient list.[13]

49.  Rather, the addition of beta-carotene has the effect of modifying the color of the product closer to the color consumers associate with a product flavored exclusively by vanilla bean components – a tanner, darker shade like in the following stock image.

---

[11] 21 U.S.C. §§ 341, 343.
[12] 21 C.F.R. § 101.22 (where there "is a flavor for which a standard of identity has been promulgated," then "it shall be labeled as provided in the standard.").
[13] 21 C.F.R. § 101.22(k)(3)

7

50. This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products.

51. Plaintiff and Class members were thus injured when they paid the full price of the Product and received an inferior Product than what was represented to them by Defendant.

52. Defendant's misleading packaging practices were material to, and were relied upon, by Plaintiff and the Class.

53. These practices would also be material to, and be relied upon by, a reasonable consumer, since reasonable consumers naturally attach considerable importance to the quality of the product they believe they are receiving.

54. Plaintiff and the Class did not know, and had no reason to know, that the Product did not contain real vanilla, understood as not containing synthetic vanillin components in the amount present.

55. Had Plaintiff and Class members known Defendant's Product did not contain real vanilla, understood as not containing synthetic vanillin components in the amount present they would not have bought the Product.

56. The Products contain other representations which are misleading and deceptive.

57. As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $2.99 per 5.3 oz (150g) (across the product line), excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

58. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

59. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

60. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

61. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

62. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

63. Plaintiff is a citizen of New Haven County, Connecticut.

64. John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

65. John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

66. The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

67. Plaintiffs purchased the Products based upon the representations on the packaging.

68. Defendant is a Delaware limited liability company with a principal place of business at 1 Maple Avenue, White Plains, New York, 10605 and upon information and belief, at least one member of defendant is a citizen of New York State.

69. During the class period, plaintiffs purchased one or more Products for personal use,

9

consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

70. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

71. Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

72. The classes will consist of all consumers in the following states: all, Connecticut, New York, Illinois, North Carolina, Ohio, Massachusetts, Vermont, California, who purchased any Products containing the actionable representations during the statutes of limitation.

73. A class action is superior to other methods for fair and efficient adjudication.

74. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

75. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

76. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

77. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

78. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

79. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest.

80. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

81. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen Stat § 42-110a, *et. seq.*, New York General Business Law ("GBL") §§ 349 & 350, California Consumers Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA") and Consumer Protection Statutes of Other States and Territories

82. Plaintiffs and John and Jane Doe plaintiffs, representing 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;
s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;
u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
cc. New York General Business Law ("GBL") §§ 349 & 350;
dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;
nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;
oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

83. Named plaintiff asserts causes of action under Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq*.

84. Jane Doe plaintiffs assert causes of action under the laws of the other 49 states, including the New York General Business Law §§ 349-350 and California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

85. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

86. Plaintiffs desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type and representations.

87. Jane Doe California plaintiff and Subclass were consumers who engaged in transactions and bought the Products for personal, family, or household consumption or use. Cal.

Civ. Code § 1761(d)-(e).

88. In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

89. After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

90. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

91. Defendant violated the consumer protection laws of the states indicated.

92. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the Products' composition.

93. Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

94. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Violations of California's False Advertising and Unfair Competition Law</u>
(On Behalf of California Subclass)

95. Jane Doe California Plaintiff realleges paragraphs above.

96. Defendant falsely advertised the Products as yogurt products labeled as vanilla yogurt and expected to contain flavoring derived exclusively from vanilla beans and not contain vanillin.

97. Jane Doe California Plaintiff and Subclass suffered injury in fact, lost money or

property as a result of Defendant's violations. of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

98. Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

Violations of California's Unfair Competition Law
(On Behalf of the California Subclass)

99. Jane Doe California Plaintiff realleges all paragraphs above.

100. Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c) the Cal. Bus. & Prof. Code §§ 17580-17581.

101. Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

102. Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

103. Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

104. Jane Doe California Plaintiff and the other California Subclass members suffered substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

105. There is no benefit to consumers or competition by deceptively marketing and

labeling the Products.

106. Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging which are misleading;

(b) provide restitution to Jane Doe California Plaintiff and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

Negligent Misrepresentation

107. Plaintiff incorporates by references all preceding paragraphs.

108. Defendant misrepresented the Products and took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector

109. Defendant had a duty to disclose and/or provide a non-deceptive, lawful description and emphasis of the Products' attributes and qualities.

110. This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

111. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

112. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

113. Plaintiff incorporates by references all preceding paragraphs.

114. Defendant manufactures and sells products which misrepresent their composition and organoleptic and sensory qualities and attributes.

115. Defendant warranted to plaintiff and class members that the Products contained only vanilla-derived flavoring was not truthful and misleading.

116. Plaintiff desired to purchase products which were as described by defendant.

117. Defendant had a duty to disclose and/or provide a non-deceptive description of the products or services and knew or should have known same were false or misleading.

118. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

119. The Products were not merchantable in their final sale form.

120. Plaintiff and class members relied on defendant's claims, paying more than they would have.

## Fraud

121. Plaintiff incorporates by references all preceding paragraphs.

122. Defendant's actions were motivated by increasing their market share amongst companies that sell yogurt products labeled as vanilla yogurt, to deceive consumers who expect that vanilla will not be accompanied by artificial vanillin.

123. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

124. Plaintiff incorporates by references all preceding paragraphs.

125. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Injunctive relief for members of the Connecticut Subclass pursuant to Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

4. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

6. An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, CUPTA, GBL, CLRA and other statutory claims;

8. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9. Such other and further relief as the Court deems just and proper.

Dated:   June 2, 2019

                                                      Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan
                                        Spencer Sheehan (SS-8533)
                                        505 Northern Blvd., Suite 311
                                        Great Neck, NY 11021
                                        (516) 303-0552
                                        spencer@spencersheehan.com

Case 7:19-cv-05165-VB Document 1 Filed 06/02/19 Page 18 of 19

7:19-cv-05165
United States District Court
Southern District of New York

Theresa Andriulli, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Danone North America, LLC

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0052
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: June 2, 2019

/s/ Spencer Sheehan
Spencer Sheehan