UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

Theresa Andriulli, Jane Doe, individually and on    :   Case No. 7:19-cv-05165-VB
behalf of all others similarly situated,             :
                                           :
                Plaintiffs,      :   Hon. Vincent L. Briccetti
                                           :
        v.                        :   **<u>MEMORANDUM OF LAW IN</u>**
                                         :   **<u>SUPPORT OF DANONE NORTH</u>**
Danone North America, LLC,            :   **<u>AMERICA, LLC'S MOTION TO</u>**
                                         :   **<u>DISMISS</u>**
                Defendant.     :
                                         :   **Oral Argument Requested**
                                         :

-------------------------------------------------------------- x

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

PLAINTIFF'S ALLEGATIONS ................................................................................... 3

ARGUMENT ................................................................................................................. 5

    I.      PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ........................... 5

          A.      The FDCA Preempts Plaintiff's Claims ................................................ 6

          B.      The Complaint Otherwise Fails to State a Claim ............................... 12

    II.     PLAINTIFF CANNOT USE STATE LAW TO ENFORCE THE
          FDCA ............................................................................................................ 14

    III.    PLAINTIFF CANNOT BRING CLAIMS UNDER STATE
          CONSUMER FRAUD STATUTES OF ANY STATE OTHER
          THAN CONNECTICUT ............................................................................. 16

    IV.    PLAINTIFF'S CLAIMS FAIL TO SATISFY RULE 9(b) ........................... 18

    V.     PLAINTIFF'S COMMON LAW CLAIMS FAIL FOR
          ADDITIONAL REASONS ......................................................................... 20

          A.      Plaintiff Does Not State a Claim for Breach of Express
                 Warranty Because the Complaint Does Not Allege
                 Danone Had Notice of the Supposed Breach.................................... 20

          B.      Plaintiff's Breach of Implied Warranty of Merchantability
                 Claim Fails ........................................................................................ 20

          C.      Plaintiff's Negligent Misrepresentation Claim Fails ........................ 22

          D.      Plaintiff's Unjust Enrichment Claim is Duplicative Under
                 New York Law.................................................................................. 22

CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010 ....................................................................21

*In re Amla Litig.*,
    328 F.R.D. 127 (S.D.N.Y. Oct. 29, 2019) ...................................................................17

*Anschultz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012)............................................................................................22

*Arthur Jaffe Assocs. v. Bilsco Auto Serv. Inc.*,
    58 N.Y. 2d 993 (1983) ................................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................2, 5, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................2, 5

*Castillo v. Tyson*,
    268 A.D. 2d 336 (N.Y.A.D. 1st Dept. 2000) ............................................................21

*In re Coleco Sec. Litig.*,
    591 F.Supp. 1488 (S.D.N.Y. 1984) ...........................................................................22

*Conroy v. Dannon Co.*,
    No. 12-cv-6901-VB, 2013 WL 4799164 (S.D.N.Y. May 9, 2013) ...............................7, 9, 10

*In re Direxion ETF Trust*,
    2012 WL 259384 (S.D.N.Y. Jan. 27, 2012) .............................................................16

*Dvora v. General Mills Inc.*,
    2011 WL 1897349 (C.D. Cal. May 16, 2011) ...........................................................11

*Ehret v. Uber Technologies Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal., Sept. 17, 2014).....................................................17

*Henry v. Gerber Products Company*,
    2016 WL 1589900 (D. Ore. April 18, 2016) ............................................................11

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ............................................................................16

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .....................................................16, 19

*In re KIND LLC "Healthy & Natural" Litig.*,
    2016 WL 4991471 (S.D.N.Y. Sept. 15, 2016)........................................................12

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)...................................................................22

*Lam v. General Mills*,
    859 F.Supp.2d 1097 (N.D. Cal. 2012) .................................................................11

*McKinnon v. Dollar Thrifty Auto Grp., Inc.*,
    2013 WL 791457 (N.D. Cal., Mar. 4, 2013)..........................................................17

*NCC Sunday Inserts, Inc. v. World Color Press*,
    692 F. Supp. 327 (S.D.N.Y. Aug. 30, 1988).........................................................18

*Omega Engineering Inc. v. Eastman Kodak Co.*,
    30 F.Supp.2d 226 (D. Conn. July 9, 1998) ...........................................................21

*Parks v. Dick's Sporting Goods, Inc.*,
    No. 05 Civ. 6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) .........................16

*Patane v. Nestle Waters North America, Inc.*,
    314 F. Supp. 3d 375 (D. Conn. May 17, 2018)......................................................14

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997).................................................................................14

*Podpeskar v. Dannon Co.*,
    2017 U.S. Dist. LEXIS 198948 (S.D.N.Y. Dec. 3, 2017) ...........................12, 13, 14

*Rapcinsky v. Skinny Girl Cocktails, LLC*,
    2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ..............................................................17

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
    399 F. App'x 637 (2d Cir. 2010) ...........................................................................21

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972)...................................................................................18

*Silva v. Smucker Nat. Foods, Inc.*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ......................................................21

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)...........................................................20

*Spratley v. FCA US LLC*,
    2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ......................................................17

*Stoltz v. Fage Dairy Processing Indus.*,
    2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ......................................................16

*Szymczak v. Nissan N. Am., Inc.*,
  2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .......................................................17

*Tarzian v. Kraft Heinz Foods Co.*,
  2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)..........................................................12

*TD Properties, LLC v. VP Bldgs., Inc.*,
  602 F.Supp.2d 351 ...............................................................................................21

*Tomasino v. Estee Lauder Cos. Inc.*,
  44 F. Supp. 3d 251 (E.D.N.Y.2014) .....................................................................20

*Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Service Co.*,
  2000 WL 775558 (Conn. Superior Ct. May 19, 2000) .........................................20

*Verzani v. Costco Wholesale Corp.*,
  2010 WL 3911499 (S.D.N.Y. Sept 28, 2010)................................................14, 15

*Verzani v. Costco Wholesale Corp.*,
  432 Fed. App'x 29 (2d Cir. 2011)........................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................18

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................11

**Statutes**

21 U.S.C. § 337(a) ....................................................................................................14

21 U.S.C. § 341 ...........................................................................................................7

21 U.S.C. § 343(i)(2) ................................................................................................11

21 U.S.C. § 343-1(a) .............................................................................................6, 9

**Other Authorities**

21 C.F.R. 101.22 ............................................................................................. *passim*

21 C.F.R. § 100.1(c)(4) ..............................................................................................6

21 C.F.R. § 131.200 ........................................................................................ *passim*

21 C.F.R. § 131.203 ....................................................................................................7

21 C.F.R. § 131.206 ..................................................................................................10

21 C.F.R. § 169.180 ....................................................................................................4

21 C.F.R. § 169.181 .................................................................................................4

21 C.F.R. § 169.182 .................................................................................................4

Danone North America, LLC[1] ("Danone") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's Complaint.

## INTRODUCTION

Danone makes and sells yogurt, including under the well-known Oikos and Dannon brands (the "Oikos and Dannon Yogurts").  The vanilla varieties of the Oikos and Dannon Yogurts are labeled as "Vanilla With Other Natural Flavors" ("Vanilla WONF").  The Oikos and Dannon Yogurts are also prominently labeled as "Yogurt."

Plaintiff takes issue with the "Vanilla WONF" labeling.  The gravamen of her Complaint is that the vanilla Oikos and Dannon Yogurts should not bear that labeling.  Instead, Plaintiff contends that Danone should label those yogurts pursuant to various FDA regulations that apply to certain non-yogurt products, ranging from vanilla powder to flavorings shipped to manufacturers or processors (not consumers) for commercial purposes rather than the FDA regulations specifically applicable to yogurt.  The FDA expressly permits the Oikos and Dannon Yogurts to be labeled "Vanilla WONF" if they are flavored with natural vanilla that comes from the vanilla plant.  Nothing in the Complaint plausibly alleges that the Oikos and Dannon Yogurts are *not* flavored with natural vanilla from the vanilla plant.  Plaintiff filed this putative class action for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and purportedly "under the consumer protection statutes of all 50 states." (Compl. ¶ 82.)  Plaintiff's Complaint is fatally flawed for several reasons.

---

[1] Plaintiff erroneously names Danone North America, LLC as Defendant. Danone US, LLC, is the entity that sells the Oikos and Dannon yogurts identified in the Complaint.  Defendant will meet and confer with Plaintiff regarding substituting the correct entity.

1

First, the federal Food, Drug, and Cosmetics Act ("FDCA")[2] preempts all of Plaintiff's claims.  The FDCA contains an express preemption provision that preempts any state law requirement that is "not identical" to labeling requirements pursuant to federal law.  Without any factual basis or legal authority, Plaintiff contends that the Oikos and Dannon Yogurts must adhere to labeling regulations that apply to either vanilla-vanillin extract, vanilla-vanillin flavoring, or vanilla-vanillin powder.  But the product is yogurt – not vanilla-vanillin extract, flavoring, or powder –  and the FDA has spoken clearly as to how yogurt must be labeled.  As a result, the Complaint seeks to impose requirements that are "not identical" to the requirements of federal law and are thus preempted.

Second, the Complaint makes a series of generalized allegations about the widespread use of synthetic vanillin in the food industry, but does not make *any factual allegations regarding Danone's use of synthetic vanillin*.  Such conclusory allegations fall far short of the pleading requirements set by the Supreme Court in *Twombly* and *Iqbal*, let alone the strictures of Rule 9(b).  Stripped of its conclusory allegations, the Complaint does not and cannot plausibly allege that the Oikos and Dannon Yogurts are not properly labeled in accordance with the FDA regulations that apply to them.

Third, Plaintiff's claims fail because they amount to an attempt to privately enforce the FDCA, where no private right of action exists.  As many courts have held, purported causes of action under state consumer protection statutes based solely on alleged violations of FDA regulations do not state a claim.

Fourth, Plaintiff cannot assert "causes of action under the consumer protection statutes of all 50 states."  By Plaintiff's own allegations, she is a Connecticut citizen who made her

---

[2] 21 U.S.C. § 301 *et seq.*

supposed purchase in Connecticut.  As a result, Plaintiff  is constitutionally and statutorily barred from bringing claims under any other state's consumer protection laws or from representing putative class members who were not injured in Connecticut.

Fifth, the entire Complaint is couched on "information and belief," which is impermissible under Rule 9(b).  Just as it falls short of the pleading requirements of *Twombly and Iqbal*, the Complaint fails to satisfy Rule 9(b) because it lacks any facts regarding Danone's purported use of synthetic vanillin or the most fundamental information regarding Plaintiff's supposed "deception" including what Oikos and Dannon Yogurts were purchased, when they were purchased, or where they were purchased.

Finally, Plaintiff's common law claims fail for additional independent and separate reasons.  The  breach of warranty claims fail because Danone was not given prior notice of any supposed breach of warranty and other essential elements of the claims, such as privity, have not been pled.  Plaintiff's unjust enrichment claim also fails as duplicative of her other claims.

For all these reasons, the Complaint fails to state a claim, and should be dismissed in its entirety with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff is a citizen of Connecticut.  (Compl. ¶ 63.)  Plaintiff's  Complaint alleges she purchased  "one or more" unspecified "Products," at an unidentified location in her "district and/or state [i.e., Connecticut]," at some time "[d]uring the class period."  (Compl. ¶ 69.)

Plaintiff claims that she was misled and deceived by Oikos and Dannon Yogurts labeled as "Vanilla WONF."  First, she states that the Oikos and Dannon Yogurts "contain less vanilla flavor derived from vanilla beans than their name suggests."  (Compl. ¶ 4.)  The Complaint does not allege any specific facts regarding the use of synthetic vanilla in the Oikos and Dannon Yogurts but alleges that "[d]ue to its versatility and demand, there are constant attempts to

imitate vanilla," (Compl. ¶ 7) and "there is a strong incentive for bad actors to 'pass off' inferior, cheaper and non-vanilla substitutes in the place of real vanilla." (Compl. ¶ 12).

Next, Plaintiff alleges that the term "Vanilla WONF" is "false, deceptive and misleading" because it fails to comply with the labeling requirements for "Vanilla-Vanillin extract/flavoring/powder."[3]  (Compl. ¶ 27-30.)  Accordingly, Plaintiff contends that the Oikos and Dannon Yogurts should be labeled as "Vanilla-Vanillin Extract/Flavoring/Powder, Imitation." (Compl. ¶ 45.)  Elsewhere in the Complaint, Plaintiff asserts that the Oikos and Dannon Yogurts should be labeled "Vanilla-vanillin extract/flavoring/powder _-fold, contains vanillin, an artificial flavor (or flavoring)."  (Compl. ¶ 29.)

Plaintiff also asserts that the statement "Vanilla WONF" is misleading because it "gives a reasonable consumer the misleading impression that the term 'natural flavor' is derived from vanilla beans."  (Compl. ¶ 31.)  Finally, Plaintiff claims that the Oikos and Dannon Yogurts are misleading and deceptive because the color of the yogurt "makes consumers less likely to question or probe into the amount and type of vanilla flavor in the Products." (Compl. ¶ 50.)

Based on these allegations, Plaintiff bring claims under CUTPA,[4] New York General Business Law ("GBL"), California's Consumers Legal Remedies Act ("CLRA") and also purports to "assert causes of action under the consumer protection statutes of all 50 states." (Compl. ¶ 82).  Plaintiff separately asserts a violation of "California's False Advertising and Unfair Competition Law," and another separate cause of action for violation of the California's

---

[3] The Complaint interchangeably cites to requirements that apply to Vanilla-Vanillin extract (21 C.F.R. § 169.180), Vanilla-Vanillin flavoring (21 C.F.R. § 169.181) and Vanilla-Vanillin powder (21 C.F.R. § 169.182).  The Complaint does not explain which regulation she believes applies to the Oikos and Dannon Yogurts.
[4] The Complaint incorrectly repeatedly refers to the CUTPA as the "CUPTA," which Danone assumes is a typographical error.

Unfair Competition Law ("UCL").  (Compl. ¶¶ 95-106.)  Finally, Plaintiff includes purported common law claims for negligent misrepresentation, breach of express warranty and implied warranty of merchantability, fraud, and unjust enrichment. (Compl. ¶107-125.)

**ARGUMENT**

A motion to dismiss should be granted when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When ruling on a motion to dismiss, a court must accept factual allegations pleaded in the complaint as true, but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a . . . claim are not entitled to an assumption of truth") (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it 'tenders naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id*.  (quoting *Twombly*, 550 U.S. at 557).  Casting aside "conclusory statements," the remaining factual allegations in a complaint must do more than "create[] a suspicion of a legally cognizable right of action," they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007).  In making this "context-specific" determination, the Court must draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## I.   **PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW**

The Complaint fails to state a claim for which relief can be granted.  First, the Oikos and Dannon Yogurts are governed, as a matter of law, by specific federal standards of identity and flavoring regulations.  The Complaint purports to impose a labeling standard that is not identical

to federal law and is thus preempted.  Second, the Complaint's generalized allegations do not

state a plausible claim because Plaintiff does not allege *any specific conduct by Danone or any*

*specific facts about the Oikos and Dannon Yogurts or their ingredients*.  Accordingly, the

Complaint fails to allege that the labeling of the Oikos and Dannon Yogurts does not adhere to

applicable regulations or is in any way misleading or deceptive.  For each of these reasons, the

Complaint fails to state a claim under any cause of action and must be dismissed in its entirety.

### A.     The FDCA Preempts Plaintiff's Claims

The FDCA contains an express preemption provision that prohibits state law

requirements "not identical" to FDCA labeling regulations: "[N]o state . . .  may directly or

indirectly establish . . . any requirement for the labeling of food that is not identical[5] to

[enumerated FDCA labeling requirements]."  21 U.S.C. § 343-1(a).  The Supreme Court has

interpreted the term "requirements" broadly to include both "positive enactments, such as

statutes and regulations," and "common-law duties."  *Bates v. Dow Agrosciences LLC*, 544 U.S.

431, 443 (2005).  Plaintiff's Two categories of food labeling covered by the express preemption

provision are at issue here: (1) labeling for food subject to a standard of identity (for example,

"yogurt," pursuant to 21 C.F.R. § 131.200) (21 U.S.C. § 343-1(a)(1)); and label statements on

yogurt declaring flavorings (21 U.S.C. § 343-1(a)(2)).

The standard of identity for yogurt requires that the Oikos and Dannon Yogurts must be

labeled according to the flavor labeling requirement of 21 C.F.R. § 101.22.  *See* 21 C.F.R. §

131.200.  And section 101.22 explicitly allows Danone to use "Vanilla WONF" to identify the

---

[5] The phrase "not identical" is defined broadly in the applicable regulation and refers to any "[s]tate requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable provision[s]." 21 C.F.R. § 100.1(c)(4).

Oikos and Dannon Yogurts' "characterizing flavor" and to list the ingredient on the ingredient list as "natural flavor."  21 C.F.R. 101.22(i), (h).  Because federal law expressly preempts any state law requirement "not identical" to those prescribed by FDA regulations, the Complaint's attempt to impose additional and different labeling requirements is preempted.

### 1.   FDA Regulations Regarding Yogurt Labeling

The FDA establishes "standards of identity" that define the characteristics of  types of food and how such foods must be labeled.  21 U.S.C. § 341.  The FDA has issued standards of identity for yogurt, lowfat yogurt, and nonfat yogurt.  *See* 21 C.F.R. §§ 131.200, 131.203, 131.206; *see also Conroy v. Dannon Co.,* No. 12-cv-6901-VB, 2013 WL 4799164, at *3 (S.D.N.Y. May 9, 2013) (Briccetti, J.) (this Court previously acknowledging that "[t]he standards of identity for yogurt are codified under 21 C.F.R. §§ 131.200 (standard for regular yogurt), 131.203 (standard for lowfat yogurt), and 131.206 (standard for nonfat yogurt).").  The FDA thus requires that the Oikos and Dannon Yogurts be labeled as "yogurt," "lowfat yogurt" or "nonfat yogurt"[6] and that the characterizing flavoring in the Oikos and Dannon Yogurts *must* be labeled in accordance with 21 C.F.R. § 101.22.  *See* 21 C.F.R. § 131.200.

> "The name of the food is 'yogurt.' The name of the food shall be accompanied by a declaration indicating the presence of any characterizing flavoring as specified in § 101.22 of this chapter."

21 C.F.R. § 131.200(f).

---

[6] FDA has established separate standards of identity for "yogurt," "lowfat yogurt," and "nonfat yogurt."  The key differences between these standards of identity relate to the required percentages of "milkfat." See 21 C.F.R. §§ 131.200, 131.203, 131.206.  For simplicity, this brief collectively refers to the separate standards as the standard of identity for "yogurt" and cites to the standard for regular yogurt in 21 C.F.R. § 131.200, unless otherwise specified.

Section 101.22, in turn, sets forth how a food's "characterizing flavor" should be declared on all "label[s], labeling and advertising."  21 C.F.R. 101.22(i).  In particular, section 101.22(i)(1) reads:

> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in 'strawberry shortcake' and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the names of the characterizing flavor, e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'.
> . . .
> (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letter not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1).

Thus, section 101.22(i)(1)(iii) expressly allows a food to be labeled as "Vanilla WONF" if it contains both a characterizing flavor from a product whose flavor is simulated (*i.e.*, vanilla extracted from the vanilla plant) and other natural flavor.

Separately, section 101.22 also confirms that "extractives" from the vanilla plant are "natural flavor[s]" or "natural flavoring" (21 C.F.R. 101.22(a)(3)),[7] and expressly allows their listing on an ingredient list as "natural flavors."  21 C.F.R. 101.22(h) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following

---

[7] 21 C.F.R. 101.22(a)(3) reads in relevant part that "[n]atural flavors include the natural essence or extractive obtained from plants listed § 182.10[.]"  Section 182.10 includes the common name "vanilla."

way: (1) Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or

'artificial flavor' or any combination thereof as the case may be.").

### 2.   Plaintiff's Claims Impose Requirements "Not Identical" To the FDA Regulations

Plaintiff's theory of the case would impose requirements that are "not identical to" –

indeed, that are directly at odds with – federal law and are thus preempted.  21 U.S.C. §343-1(a).

The Complaint does not allege any facts showing that the Oikos and Dannon Yogurts do not

contain "Vanilla WONF."  Nor does it contest that vanilla extractives are not "natural flavors."

Instead, the Complaint contends that these statement are "false, deceptive and misleading"

because they do not adhere to additional requirements Plaintiff cherry-picks from inapplicable

regulations.

Without any factual basis or legal authority, the Complaint conclusorily states that

"Vanilla WONF [with natural flavors] is the equivalent of the standardized vanilla-vanillin

combination ingredients- Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin

powder"[8] (Compl. at ¶ 25) and thus the Oikos and Dannon Yogurts must adhere to requirements

that apply to the standards of identity for "vanilla-vanillin." (Compl. ¶¶ 26, 29, 45.)   But the

product is "yogurt" and as a matter of law, <u>must</u> be labeled accordingly.  21 C.F.R. § 131.200;

*see also Conroy*, 2013 WL 4799164 at *3 (this Court interpreting the standard of identity for

yogurt and holding "[s]tandardized foods must conform to the standards of identity promulgated

by the FDA").  Thus, the entire theory of Plaintiff's case – to require that the characterizing

flavor be labeled in myriad alternate ways – seeks to impose labeling requirements on yogurt that

are "not identical" and indeed are directly at odds, with the FDA requirements.  *See* 21 C.F.R. §

---

[8] As noted, Plaintiff interchangeably cites to these three regulations but never explains which she believes should apply to the Oikos and Dannon Yogurts, notwithstanding the standard of identity for yogurt.

131.200.  Any attempt by Plaintiff to impose these additional requirements is preempted by federal law.[9]

Plaintiff also represents to the Court that "21 C.F.R. 101.22" stands for the proposition that "where there 'is a flavor for which a standard of identity has been promulgated' then 'it shall be labeled as provided in the standard.'" (Compl. ¶ 41, footnote 12.)[10]   The quoted language comes from 21 C.F.R. § 101.22(g), however, when placed in context reads: "A flavor shall be labeled in the following way **when shipped to a food manufacturer or processor (but not a consumer)** for use in the manufacture of a fabricated food, unless it is a flavor for which a standard of identity has been promulgated, in which case it shall be labeled as provided in the standard[.]" 21 C.F.R. 101.22(g) (emphasis added).

Thus, the purported authority relied upon provides that underlying flavoring products shipped to food manufacturers or processors should be labeled in accordance with the standard of identity for flavoring products.  It specifically excludes consumer products.  Accordingly, Plaintiff's theory that the labeling requirements for vanilla-vanillin "extract/flavoring/powder" somehow supersede the labeling requirements for yogurt is wrong and cannot support any cause of action, as a matter of law, for at least two reasons.  First, the Oikos and Dannon Yogurts are yogurts, not flavoring products.  21 C.F.R. § 131.200; *see also Conroy*, 2013 WL 4799164 at *3.  Second, the

---

[9] The Complaint also implies that Danone's use of Vanilla WONF on Oikos yogurt labels is somehow misleading because beta carotene is used as a coloring agent.  *See* Compl. ¶¶ 45-50.  "This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products."  *Id.* ¶ 50.  This claim is also preempted because it seeks to impose additional requirements "not identical" to the regulations that govern the use of "Vanilla WONF," which do not restrict the use of ingredients for color.  *See* 21 C.F.R. § 101.22(i).  The standard of identity for yogurt also *expressly permits* the use of "color additives" in the Oikos yogurt. *See* 21 C.F.R. § 131.200(d)(4).

[10] Tellingly, this is the only time in the Complaint where Plaintiff cites to section 101.22 and no subsection is referenced.

Oikos and Dannon Yogurts are undisputedly sold to consumers, not shipped to food manufacturers.  (Compl. ¶ 1 ("Danone . . . sells yogurt products labeled as vanilla yogurt to consumers").)  Thus, pursuant to the standard of identity for yogurt, the Oikos and Danonn Yogurts must be labeled in compliance with section 101.22.

Defendant's argument is not novel as many courts across the country have found that where, as here, labels are subject to the flavoring regulations of section 101.22, claims that would impose additional or different labeling requirements are expressly preempted.  *See e.g., Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 891 (C.D. Cal. 2013) (challenges to "'natural flavors' labels . . . are preempted, because such labeling references the characterizing flavor of the food and is permitted by § 101.22.") (collecting cases); *Henry v. Gerber Prods. Co.*, 2016 WL 1589900 (D. Or. April 18, 2016) (challenges to flavor labeling under 101.22(i) preempted where different from what "the FDA regulations [101.22(i)] plainly allow a manufacturer to [do]."); *Lam v. General Mills*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) (challenges to flavor labeling preempted because labeling expressly authorized by the FDA); *Dvora v. General Mills Inc.*, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011) (challenges to flavor labeling expressly preempted because would 'impose different requirements on precisely those aspects . . . that the FDA had approved.").

The same is true here.  The Complaint attempts to bar Danone's use of "Vanilla WONF" or impose additional labeling requirements based on her grab-bag reading of federal regulations.  (Compl. 29-45.)  But Plaintiff's labeling theories must yield to what FDA regulations  require for yogurt.  Because her lawsuit would create labeling requirements "not identical" to 21 C.F.R. §

131.200 and 21 C.F.R. 101.22(i), all of her state law claims are expressly preempted by the FDCA, and should be dismissed.[11]

### B.   The Complaint Otherwise Fails to State a Claim

#### 1.   Plaintiff's Generalized Grievances Do Not State a Claim

The Complaint fails to allege any *specific facts regarding Danone, the Oikos and Dannon Yogurts or their ingredients.* Instead, the Complaint is replete with a series of general allegations about the widespread use of synthetic vanillin in food products generally.[12]  That is not enough to state a claim.  *See In re KIND LLC "Healthy & Natural" Litig.*, 2016 WL 4991471, at *6 (S.D.N.Y. Sept. 15, 2016) ("Plaintiffs' allegations that 'approximately 90% of the canola, 89% of the corn, and 94% of the soybeans grown in the United States are genetically modified' are insufficient without being tied to the [] products [at issue.]"); *Podpeskar v. Dannon Co*., 2017 WL 6001845, at *9-10 (S.D.N.Y. Dec. 3, 2017) (granting motion to dismiss in part because plaintiff failed to allege facts specific to Dannon's practices); *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) ("Plaintiffs' allegations detail the practices commonly used to manufacture citric acid throughout the industry before concluding: 'Thus, Defendant's citric acid is artificial.' That is too great of an inferential leap.").

In *Podpeskar*, for example, "[t]he nub of plaintiff's claim [was] simply that yogurt is made from milk, and that–today–most milk is made from cows that consume feed of a particular

---

[11] To the extent Plaintiff contends that "Vanilla" must be explicitly listed on the ingredient list (Compl. ¶ 19,) those claims would also impose a requirement "not identical" to the requirement of 101.22.  *See* 21 U.S.C. § 343(i)(2) (labels must bear "the common or usual name of each . . . ingredient . . . except that spices, flavorings, and colors . . .may be designated as spices, flavorings, and colorings without naming each."); *see also* 21 C.F.R. 101.22(h) ("Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor' or any combination thereof as the case may be.").

[12] Tellingly, and as discussed further below, the entire Complaint is couched on "information and belief." (See Compl. at p. 1).

type, and are subjected to certain animal husbandry practices[.]" *Podpeskar*, 2017 WL 6001845 at *4.  Notwithstanding plaintiff's grievances with the dairy industry, "[s]he sa[id] very little about Dannon's specific practices[.]"  *Id.*  The court held that "such conclusory arguments cannot meet *Twombly's* insistence that claims be nudged over the line from conceivable to plausible" and dismissed plaintiff's claims, with prejudice. *Id.*

That is exactly what Plaintiff attempts here.  Plaintiff's  "factual allegations" regarding synthetic vanillin are:

- "Due to its versatility and demand, there are constant attempts to imitate vanilla, whether through synthetic vanillin made from tree bark, or harmful compounds such as coumarin." (Compl. ¶ 7.)

- "Daily headlines alert us to the growing threat of 'food fraud'. . ." (Compl. ¶ 8.)

- "[Food fraud] methods include the (1) replacement of valuable ingredients – botanically derived natural vanillin- with less expensive substitutes like synthetically produced vanillin . . ." (Compl. ¶ 10.)

- "As the world's second most expensive (after saffron) flavoring ingredeient, there is a strong incentive for bad actors to 'pass off' inferior, cheaper, and non-vanilla substitutes in the place of real vanilla, resulting in immense profits." (Compl. ¶ 12.)

- "While technology has improved to detect the fingerprints of vanilla fraud through chromatography, the bad actors are always a step ahead, devising new ways of slipping by the latest tests." (Compl. ¶ 14.)

- "The ingredient which is best known for simulating and extending vanilla is vanillin (an artificial flavor)." (Compl. ¶ 22.)

The Complaint is utterly lacking in *any* specific allegations of fact about Danone, the Oikos and Dannon Yogurts or their ingredients.  Yet, based on the foregoing vague and generalized allegations, the Complaint proceeds to take an  inferential leap by asserting that "[h]ad Plaintiff and Class members known Defendant's product did not contain real vanilla, understood as not containing synthetic vanillin components" they would not have bought the Oikos and Dannon Yogurts. (Compl. ¶ 55.)  Plaintiff does not allege any facts to support that

conclusion.  The Complaint nowhere alleges that the Oikos and Dannon Yogurts do not contain

real vanilla, nor can it.  Just as in *Podpeskar*, "such conclusory arguments cannot meet

*Twombly's* insistence that claims be nudged over the line from conceivable to plausible" and

must be dismissed. *Podpeskar*, 2017 WL 6001845 at *4; *see also Iqbal*, 556 U.S. at 678 (a

complaint does not suffice "if it tenders 'naked assertion[s]' devoid of further factual

enhancement.'").

### 2.    The Oikos and Dannon Yogurts Are Lawfully Labeled Pursuant to FDA Regulations and Plaintiff Cannot Plausibly Allege Otherwise

Stripped  of its conclusory and insufficient allegations, the Complaint fails to plausibly

allege that the Oikos and Dannon Yogurts are not labeled in accordance with the applicable FDA

regulations.  As explained above, the Oikos and Dannon Yogurts are yogurts, subject to the

standard of identity for yogurt.  *See* FDA Regulations Regarding Yogurt Labeling, Section I.A.1,

*supra*.  The FDA regulations that govern the labeling of flavors in yogurt expressly allow

Danone to use the term "Vanilla WONF" on the Oikos and Dannon Yogurts.  The Complaint

does not and cannot plausibly allege that these FDA regulations do not apply, or that the Oikos

and Dannon Yogurts do not comply with them.  Accordingly, the Complaint fails to state a claim

and must be dismissed.

## II.    PLAINTIFF CANNOT USE STATE LAW TO ENFORCE THE FDCA

Plaintiff's claims fail for the separate and independent reason that they  attempt (albeit

erroneously) to enforce the FDCA, when the FDCA precludes a private right of action.  21

U.S.C. § 337(a).  Even if Danone had somehow violated the FDA labeling regulations (which it

has not), a violation of FDA regulations without more does not create a cause of action under

state consumer fraud statutes.  Courts have consistently held so.  *PDK Labs, Inc. v. Friedlander*,

103 F.3d 1105, 1113 (2d Cir. 1997) (no state law cause of action if a plaintiff's "true goal is to

privately enforce alleged violations of the FDCA."); *Patane v. Nestle Waters North America,*

*Inc.*, 314 F. Supp. 3d 375, 385 (D. Conn. 2018) ("only the federal government—not private parties—may enforce violations of the FDCA"); *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349.").

In *Verzani*, for example, plaintiff alleged that a shrimp cocktail product "violated the FDCA and [FDA] regulations on the labeling of 'shrimp cocktails.'" *Verzani*, 2010 WL 3911499 at *3. The court held that plaintiff's state laws claims of "unfair and deceptive business practices" were entirely "premised on violations of the FDCA." *Id.* Because plaintiff's allegations relied solely on alleged technical violations of FDA regulations, plaintiff's "true purpose [was] to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices." *Id.* The court dismissed her claims. And the Second Circuit affirmed the judgment "[f]or substantially the same reasons set forth in the district court's thorough and well-reasoned memoranda and orders." *Verzani v. Costco Wholesale Corp.*, 432 Fed. App'x 29, 30 (2d Cir. 2011).

Here, Plaintiff's claims rely solely (albeit incorrectly) on purported violations of FDA regulations. Plaintiff contends that the Oikos and Dannon Yogurts are "false, deceptive and misleading" because they are not labeled according to the regulatory standards of identity for flavoring products. (Compl. ¶ 25-40 (citing violations of 21 C.F.R. § 169.180, § 169.181, § 169.182).) The Complaint attempts to shoehorn purported violations of the FDCA into violations of state consumer protection statutes. As many courts have held, that is improper. Accordingly, Plaintiff's claims must be dismissed because the true purpose of her lawsuit is to "privately enforce alleged violations of the FDCA." *See Verzani*, 2010 WL 3911499 at *3.

III.   **PLAINTIFF CANNOT BRING CLAIMS UNDER STATE CONSUMER FRAUD**
**STATUTES OF ANY STATE OTHER THAN CONNECTICUT**

Plaintiff is a Connecticut citizen who made her alleged purchase in Connecticut.  (Compl.

¶¶ 63, 69.).  Thus, she cannot "assert causes of action under the consumer protection statutes of

all 50 states" (Compl. ¶ 81), for several independent and separate reasons.

First, Plaintiff lacks standing to bring claims under the laws of states in which she has

never lived and in which she has never made a purchase.  *In re HSBC BANK, USA, N.A., Debit*

*Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ("the Court finds that that

named plaintiffs lack standing to bring claims under state laws to which Plaintiff have not been

subjected. . . . To hold otherwise 'would allow Plaintiff to engage in lengthy and expensive

discovery with respect to alleged violations of state laws when the Court cannot be certain that

any individual suffered an injury under those laws.'"); *See In re Direxion ETF Trust,*  2012 WL

259384, at *6–7 (S.D.N.Y. Jan. 27, 2012) (dismissing claims for which named plaintiffs did not

have an injury traceable to defendants' conduct); *Parks v. Dick's Sporting Goods, Inc.*, 2006 WL

1704477, at *2 (W.D.N.Y. June 15, 2006) (plaintiff lacked standing "to assert state-law claims

arising under the laws of states other than New York, since [no injury occurred] anywhere other

than New York").

Separate and apart from the standing requirement, other courts have similarly concluded

that claims that go beyond what are alleged by an actual plaintiff in the complaint must be

disregarded. [13]  *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *3 (S.D.N.Y. Oct.

_____

[13] Plaintiff cannot skirt this requirement by referencing a "Jane Doe" as a "placeholder" to assert
causes of action.  *Stoltz v. Fage Dairy Processing Indus.*, 2015 WL 5579872, at *11-13
(E.D.N.Y. Sept. 22, 2015) ("the Court *sua sponte* dismisses Plaintiffs' claims on behalf of John
Doe and Jane Doe as class representatives . . . [because] there is no indication that John Doe and
Jane Doe are actual people or that either "John Doe" or "Jane Doe" are used in any sense other
than as placeholder names for parties whose true identity is unknown.")

26, 2016) ("Although Plaintiffs' complaint purports to invoke [] laws from 'any of the fifty states and the District of Columbia,' Izquierdo, a resident of New York, is the only named plaintiff identified to a state. Therefore, the Court will look only to New York").

Second, New York consumer protection laws cannot be used to state a claim for a Connecticut resident who was supposedly deceived by a purchase she made in Connecticut. "New York law is clear that GBL § 349 does not apply to out-of-state plaintiffs who were allegedly deceived outside of New York." *Rapcinsky v. Skinny Girl Cocktails, LLC*, 2013 WL 93636, at *5 (S.D.N.Y. Jan. 9, 2013); *see also In re Amla Litig.*, 328 F.R.D. 127, 132 n.3 (S.D.N.Y. Oct. 29, 2019) (GBL claims do not apply to transactions outside of New York); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) (GBL § 349 and 350 do not apply to transactions occurring outside the state); *Spratley v. FCA US LLC*, 2017 WL 4023348, at *7–8 (N.D.N.Y. Sept. 12, 2017) (dismissing claims of out-of-state plaintiffs who had "shown no connection between their claims and Chrysler's contacts with New York").

Nor can Plaintiff attempt to utilize California's UCL or CLRA to state a cause of action for alleged deception occurring outside of California. *Ehret v. Uber Technologies Inc.,* 68 F. Supp. 3d 1121, 1130 (N.D. Cal., Sept. 17, 2014) ("neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially, and therefore, the presumption against extraterritoriality applies to the UCL in full force.") (internal quotations omitted); *McKinnon v. Dollar Thrifty Auto Grp., Inc.*, 2013 WL 791457 (N.D. Cal., Mar. 4, 2013) (extending the restriction on extraterritorial application to CLRA claims).

Finally, Plaintiff is statutorily barred from representing putative class members outside of Connecticut.  Conn. Gen. Stat. § 42-110g(b) (under the CUTPA, persons "may bring a class

17

action on behalf of themselves and other persons similarly situated <u>who are residents of this state</u> <u>or injured in this state</u> to recover damages.") (emphasis added).  Courts have confirmed that a plaintiff cannot use the CUTPA to represent persons outside of Connecticut.  *Gen. Stat. See In re Trilegiant Corp.*, Inc., 11 F. Supp. 3d 82, 114 (D. Conn. 2014) (dismissing claims on behalf of putative class members outside of Connecticut because the "plain and unambiguous" text of the statute "clearly and unambiguously does not permit a class action to be brought on behalf of non-residents or on behalf of those not injured in Connecticut, and that the language expresses the deliberate legislative intent that such suits not be permitted . . .").

Accordingly, in addition to the many other reasons previously outlined, Plaintiff's purported statutory claims on behalf of non-Connecticut residents must be dismissed.

## IV.   **PLAINTIFF'S CLAIMS FAIL TO SATISFY RULE 9(b)**

All of Plaintiff's claims must be dismissed for the independent and separate reason that the Complaint falls far short of the pleading requirements of Rule 9(b).  Causes of action that sound in fraud must be pled with particularity to satisfy Rule 9(b).[14]

Here, Plaintiff's allegations of fraud do not come close to satisfying Rule 9(b).  As an initial matter, the entire Complaint is couched on "information and belief."  (*See* Compl. at p. 1 ("Plaintiffs by attorneys [sic] <u>alleges upon information and belief</u>, except for allegations pertaining to plaintiff, which are based on personal knowledge.") (emphasis added).)  Allegations based on information and belief do not satisfy the pleading requirements of Rule

---

[14] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) ("State law consumer protection claims that sound in fraud must therefore be 'accompanied by the who, what, when, where, and how of the misconduct charged."); *NCC Sunday Inserts, Inc. v. World Color Press*, 692 F. Supp. 327, 330 (S.D.N.Y. Aug. 30, 1988) ("A claim for unfair and deceptive trade practices under CUTPA, which incorporates the same allegations [as for fraud], is essentially an action sounding in fraud and must meet the provisions of Rule 9(b).").

9(b). *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) ("Rule 9(b) pleadings cannot be based 'on information and belief.'").  The entire Complaint must be dismissed for this reason alone.

Second, Plaintiff's allegations fall short of Rule 9(b)'s strictures because they lack the required specificity.  Plaintiff does not identify which Oikos or Dannon Yogurts were allegedly purchased, where they were purchased, , when they were purchased, or what statements she relied on in making her purchase. (*e.g.*, Compl. ¶ 69 ("During the class period, plaintiffs purchased one or more Products for personal consumption or application[15] with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.")  Most fundamentally, Plaintiff fails to allege any specific facts regarding Danone, the Oikos and Dannon Yogurt or their ingredients to support the general allegations regarding the use of synthetic vanillin in foods.  The Complaint is thus devoid of *facts* regarding *any* conduct by Danone, let alone fraudulent conduct.  It accordingly fails to "identify the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent, specifying who made them, and where and when they were made," as required by Rule 9(b). *Izquierdo*, 2016 WL 6459832 at *9.

Finally, for the same reasons, the Complaint alleges no facts that give rise to a strong inference of fraudulent intent.  *See Dash*, 27 F. Supp. 3d at 362 (citation omitted) ("When alleging fraud, a plaintiff must 'specifically plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'").  Therefore, Plaintiff's fraud claims must be dismissed.

---

[15] This boilerplate language appears to have been copied and pasted from another complaint as the yogurts at issue here are not sold for "application" to anything.

## V.    PLAINTIFF'S COMMON LAW CLAIMS FAIL FOR ADDITIONAL REASONS

Plaintiff's negligent misrepresentation, breach of express warranty and implied warranty of merchantability, fraud, and unjust enrichment claims should also be dismissed for the following separate and independent reasons under New York or Connecticut law.

### A.    Plaintiff Does Not State a Claim for Breach of Express Warranty Because the Complaint Does Not Allege Danone Had Notice of the Supposed Breach

Plaintiff's express warranty claim fails "because there is no allegation that she made a timely notification to Defendant of any breach of warranty," which is required under New York and Connecticut law. *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) ("Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty."); *Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Serv. Co.*, 2000 WL 775558, at *3 (Conn. Super. Ct. May 19, 2000) (dismissing claim of breach of warranty where complaint did not allege notice to defendant).  Here, the Complaint does not allege when the Plaintiff discovered the alleged breach of warranty or that Danone was provided notice of the same.  (Compl. ¶¶ 113-120.)    Because "Plaintiff has failed to allege that [s]he provided timely notice to Defendant of the alleged breach, Plaintiff's express warranties claim must be dismissed." *Singleton*, 2016 WL 406295 at *12; *see also Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) (dismissing plaintiff's breach of warranty claims "for failure to provide notice of the alleged breaches to the defendants within a reasonable time").

### B.    Plaintiff's Breach of Implied Warranty of Merchantability Claim Fails

Plaintiff's claim for breach of the implied warranty of merchantability fails for at least three additional reasons.

First, Plaintiff has not alleged that the Oikos and Dannon Yogurts are not merchantable. To state a claim for breach of implied warranty of merchantability under New York or Connecticut law, a plaintiff must allege that the products were not "fit for the ordinary purposes

for which such goods are used." *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 640 (2d Cir. 2010) (quoting N.Y. U.C.C. § 2-314(2)(c)); *see also Omega Engineering Inc. v. Eastman Kodak Co.,* 30 F. Supp. 2d 226, 249 (D. Conn. July 9, 1998) (quoting Conn. Gen. Stat. § 42a-2-314(2)).  This "warranty does not mean that the product will fulfill a 'buyer's every expectation' but simply 'provides for a minimum level of quality.'" *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (citation omitted). "Where the sale of a food or beverage is concerned, courts have ruled that the products need only be fit for human consumption to be of merchantable quality." *Id*.; *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (dismissing New York breach of implied warranty of merchantability claim for failure to establish Vitaminwater beverage was not "merchantable" in that it did not meet "a minimum level of quality"). Here, Plaintiff makes no allegation that the yogurt was not fit for human consumption or otherwise contaminated or not edible. Thus, the breach of implied warranty claim fails.

Second, Plaintiff has failed to sufficiently allege privity, which is also required to state a claim for breach of implied warranty. *Arthur Jaffe Assocs. v. Bilsco Auto Serv. Inc*., 58 N.Y. 2d 993, 995 (1983) (affirming dismissal of implied warranty claim for lack of privity under New York law); *Castillo v. Tyson*, 268 A.D. 2d 336, 336 (N.Y. App. Div. 1st Dept. 2000) ("there can be no breach of warranty claim absent privity of contract between plaintiffs and defendants"); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 362 (dismissing implied warranty claims under Connecticut law for lack of privity). Here, Plaintiff makes no allegation that she purchased the Oikos and Dannon Yogurts from Danone. Indeed, the Complaint does not allege from whom Plaintiff allegedly purchased any Oikos and Dannon Yogurts, only that she purchased it "within [her] district and/or state[]." (Compl. ¶ 69.) Thus, Plaintiff has failed to allege that she purchased any yogurt directly from Danone and has failed to allege privity.

And, as noted above, Plaintiff has failed to allege that she notified Danone of the alleged breach of implied warranty. (Compl. ¶¶113-120.)

### C.   Plaintiff's Negligent Misrepresentation Claim Fails

Plaintiff does not state a claim for negligent misrepresentation because she does not allege privity of contract with Danone or a relationship so close as to approach that of privity. *In re Coleco Sec. Litig.,* 591 F.Supp. 1488, 1491-94 (S.D.N.Y. 1984) (no claim for negligent misrepresentation under Connecticut or New York law absent privity or a bond so close as to approach privity).  Negligent misrepresentation claims are limited "to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Anschultz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012). Accordingly, as does her breach of warranty claim, Plaintiff's negligent misrepresentation claim fails for lack of privity.

### D.   Plaintiff's Unjust Enrichment Claim is Duplicative Under New York Law

Plaintiff's claim for unjust enrichment is duplicative of her statutory and common law claims and must be dismissed. "An unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Corsello v. Verizon New York, Inc*., 18 N.Y.3d 777, 790-91 (2012)).  Where, as here, a claim of unjust enrichment "relies on the same facts as [Plaintiff's] other causes of action in tort," it is duplicative and should be dismissed. *Bowring*, 234 F. Supp. 3d at 392 (rejecting plaintiff's assertion that she could "plead her unjust enrichment claim in the alternative").  *Koenig*, 995 F. Supp. 2d at 290 (unjust enrichment claim would be duplicative if other claims were to succeed, and must therefore fail if his other claims fail).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed in their entirety, with prejudice.

Dated: October 25, 2019                                    Respectfully submitted,

**VENABLE LLP**

By:   /s/ *Angel A. Garganta*
Angel A. Garganta (*pro hac vice*)
Amit Rana (*pro hac vice*)
101 California Street, Suite 3800
San Francisco, CA 94111
Tel: 415.653.3750
Fax: 415.653.3755

Elise M. Gabriel
1270 Avenue of the Americas
24th Floor
New York, New York 10020
Tel.: 212-307-5500
Fax:  212-307-5598

*Attorneys for Defendant Danone North America, LLC*